***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission AFFIRMS with some modifications the Opinion and Award of Deputy Commissioner Stephenson.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. At all times relevant hereto, the parties were bound by and subject to the provisions of the Workers' Compensation Act, the defendant-employer regularly employing three or more employees.
2. On or about September 25, 2007 there was an employer-employee relationship between plaintiff and defendant-employer.
3. On or about September 25, 2007, the carrier on this risk was Travelers Insurance Company.
4. Plaintiff's average weekly wage, pursuant to the Form 22, was $315.13, which yields a compensation rate of $210.10.
5. It was stipulated and agreed that all medical records and reports were entered into evidence without further identification or proof, and a complete set of records was provided at the hearing before the Deputy Commissioner.
6. The following evidence was admitted into the record:
 a. The Pre-Trial Agreement marked as stipulated exhibit 1.
 b. A set of Industrial Commission forms marked as stipulated exhibit 2.
 c. A set of Plaintiff's Responses to Defendant's Discovery marked as stipulated exhibit 3.
 d. A set of motions filed by plaintiff and defendants marked as stipulated exhibit 4.
 e. A set of Industrial Commission orders marked as stipulated exhibit 5.
 f. Plaintiff's employment records marked as stipulated exhibit 6.
 g. Medical records marked as stipulated exhibit 7.
7. The issues for determination are: *Page 3 
 a. Did plaintiff sustain a compensable injury by accident on or about September 25, 2007 resulting in an injury to his right shoulder;
 b. To what, if any, indemnity and medical compensation is plaintiff entitled;
 c. What penalties, if any, should be imposed against defendants for failure to respond to the Form 18 notice within 30 days as required by N.C. Gen. Stat. § 97-18(j);
 d. Whether defendants are entitled to one-half of the mediator's fee, or $151.25 (after subtraction of time agreed to be paid by plaintiff to defendants for defendants' request for costs for plaintiff's delay in beginning mediation), pursuant to the Rules for Mediated Settlement and Neutral Evaluation Conferences of the North Carolina Industrial Commission Rule 7(c);
 e. Whether defendants are entitled to a credit for unemployment benefits received by plaintiff in the amount of $169.00 per week from December 28, 2007 through February 28, 2008, totaling approximately $1,521.00;
 f. If this claim is found compensable, whether defendants are entitled to a credit for any income received by plaintiff from October 1, 2007 to the present.
 ***********
Based upon the competent, credible evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 40 years old and was employed by defendant-employer as a floor technician. He had no prior history of complications with his right shoulder before September 25, 2007. Plaintiff did have a pre-existing neck condition resulting from a prior work related incident with another employer.
2. On or about September 25, 2007, plaintiff was pulling a laundry cart and pushing a food tray cart down the 500 hallway at defendant-employer's facility when a patient stepped in front of him, causing plaintiff to lose control of the laundry cart. The laundry cart swung out and twisted plaintiff's right arm. Plaintiff experienced pain in his right shoulder and neck.
3. Following the September 25, 2007 incident, plaintiff's supervisor Gerald Simmons transported him to the emergency room at Wake Med Emergency. Plaintiff reported right shoulder pain, but left the ER before being treated. Plaintiff believed that the source of his pain was the area of his neck which he had previously injured while employed with a former employer. Plaintiff informed Mr. Simmons that he did not know whether his neck or his shoulder was injured, but that any injury to his neck was not related to work with his current employer. Mr. Simmons testified that he did not take plaintiff to the ER and that the accident could not have happened as described by plaintiff. Mr. Simmons also testified that plaintiff said his injury occurred at home.
4. The Full Commission finds plaintiff's description of the incident on September 25, 2007, to be credible and gives greater weight to his testimony than to that of Mr. Simmons.
5. Following the September 25, 2007 incident, plaintiff returned to work but was directed to see his primary physician. In the Form 19 prepared by defendants, they admitted knowledge that plaintiff reported a work related injury by October 1, 2007. *Page 5 
6. On October 4, 2007, plaintiff sought treatment for pain in his shoulders and neck at Wake Health Services. He informed Wake Health Services that on September 25, 2007 that he injured himself ". . . pulling and pushing a heavy cart/laundry (bin)". He was taken out of work for two weeks and was directed to undergo x-rays, which were done of both his neck and his shoulders on October 8, 2007.
7. Plaintiff's pain worsened and he sought treatment for his right shoulder at the Wake Med Emergency Room on November 5, 2007. Plaintiff told physician's assistant David Goodman that he injured his right shoulder pulling a linen cart at work a few weeks prior to that date. Mr. Goodman referred plaintiff to follow up with an orthopedist.
8. On November 12, 2007, plaintiff sought treatment for his right shoulder with orthopedist Dr. Jonathan Chappell. A progress sheet completed in Dr. Chappell's office reveals that plaintiff reported that his right shoulder pain began when he "was @ work pushing and pulling a cart." Dr. Chappell recommended that plaintiff undergo an MRI.
9. The MRI of plaintiff's right shoulder revealed that he sustained a superior labral tear of his right shoulder.
10. On December 5, 2007, Dr. Chappell kept plaintiff out of work until after an evaluation subsequent to the January 3, 2008 surgery of his right shoulder.
11. On January 3, 2008, Dr. Chappell performed surgical repair of the labrum in plaintiff's right shoulder.
12. At his deposition Dr. Chappell stated that plaintiff's description of the September 25, 2007 incident could have resulted in an injury, causing the findings on the MRI and at the time of surgery. He further stated that this type of injury does not usually occur unless there is a substantial amount of force to the arm. Dr. Chappell believed that plaintiff's description of the *Page 6 
cart swinging out and twisting his arm could and more likely than not would have caused the type of injury to his shoulder that was consistent with a lesion of the superior labrum.
13. The set of circumstances on September 25, 2007 whereby plaintiff injured his right shoulder as the result of losing control of a laundry cart while also pushing a food tray cart constitutes an interruption of plaintiff's regular work routine and the introduction of an unlooked for and untoward event which was not expected or designed by plaintiff. Therefore, plaintiff sustained a compensable injury by accident on September 25, 2007, resulting in an injury to his right shoulder which was surgically treated by Dr. Chappell.
14. From December 5, 2007 to March 2, 2008, plaintiff was unable to earn any wages due to the right shoulder injury surgically treated by Dr. Chappell. Plaintiff received unemployment insurance benefits in the amount of $169.00 per week from December 28, 2007 until February 28, 2008, totally $1,521.00.
15. On or about March 2, 2008, plaintiff returned to work for another employer earning wages comparable to the wages he was earning at the time of his injury.
16. As of the last medical record included in the evidentiary record, Dr. Chappell had not yet determined that plaintiff had reached maximum medical improvement and had not assigned any permanent partial disability rating for plaintiff's right shoulder.
17. At the time of his injury, plaintiff's average weekly wage was $315.00, which yields a compensation rate of $210.10.
18. Plaintiff filed a Form 18 with the Industrial Commission on January 4, 2008. Defendants filed a Form 61 denial of plaintiff's claim on March 24, 2008. Defendants failed to timely file a response within 30 days following notice of the filing of plaintiff's Form 18 with the Industrial Commission. *Page 7 
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 25, 2007, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in which he sustained a right shoulder injury. N.C. Gen. Stat. § 97-2(6).
2. As a result of the September 25, 2007 injury by accident, plaintiff was temporarily totally disabled from any employment and is entitled to receive temporary total disability compensation in the amount of $210.10 per week from December 5, 2007 to March 2, 2008. N.C. Gen. Stat. § 97-29. Defendants are entitled to receive a credit in the amount of $1,521.00 for unemployment benefits paid plaintiff during this period. N.C. Gen. Stat. § 97-42.1.
3. Plaintiff is entitled to payment by defendants of medical treatment for the injury he sustained as a result of the compensable injury by accident. N.C. Gen. Stat. § 97-25.
4. In its discretion, the Full Commission declines to award additional attorney's fees to plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-88. Taylor v. J. P. Stevens Co.,307 N.C. 392, 298 S.E.2d 681 (1983).
 ***********
Based on the findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the compensation rate of $210.10 per week from December 5, 2007 until March 2, 2008. *Page 8 
Defendants shall receive credit for unemployment compensation in the amount of $1,521.00 received during this time period. This portion of the Award has accrued and shall be paid in a lump sum subject to the attorney's fee approved below.
2. Defendants shall pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, including the right shoulder surgery performed by Dr. Chappell.
3. Plaintiff's right to elect to receive compensation for permanent functional impairment to his right shoulder, if any, is HEREBY RESERVED.
4. Defendants shall pay the costs.
5. Defendants shall pay attorney's fees to plaintiff's counsel in the amount of 25% of the compensation awarded to plaintiff in paragraph 1 above.
6. Defendants shall be sanctioned $50.00 for their failure to timely respond to the Form 18 filed by plaintiff.
7. Defendants shall pay the costs, including an expert witness fee of $400.00 to Dr. Chappell, $400.00 to Dr. Hinchey, and $250.00 to David Goodman, if not already paid.
This 4th day of January, 2010.
 S/___________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
S/___________________ DANNY LEE McDONALD COMMISSIONER
S/___________________ DIANNE C. SELLERS COMMISSIONER